The document below is hereby signed.

Signed: June 13, 2016



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
CRYSTAL L. WILKERSON,          )   Case No. 14-00582
                               )   (Chapter 13)
            Debtor.            )   Not for publication in
                               )   West's Bankruptcy Reporter.

MEMORANDUM DECISION AND ORDER RE
DEBTOR'S COUNSEL'S SECOND APPLICATION FOR FEES

This supplements and amends my oral decision of May 20,

2016, regarding the second application for fees and reimbursement

of expenses filed by the debtor's counsel, Morgan W. Fisher, a

member of the Law Offices of Morgan Fisher LLC.  The application

seeks to have such fees and expenses awarded under 11 U.S.C.

§ 330 and to be treated as an administrative claim under 11

U.S.C. § 503(b)(2).  The chapter 13 trustee objected to the

application.

I

One objection raised by the chapter 13 trustee was that the

application sought fees in violation of 11 U.S.C. § 504(a).  The

fee application sought to recover fees at $300 per hour for work

performed by Courtney L. Weiner, work for which Fisher paid

Weiner at $65 per hour.  In relevant part, § 504(a) provides that
except as provided in § 504(b):

> a person receiving compensation or reimbursement under
> section 503(b)(2) . . . of this title may not **share or
> agree to share**–
> > (1) any such compensation or reimbursement with
> > another person; or
> > (2) any compensation or reimbursement received by
> > another person under such section[].

[Emphasis added.]  As noted in *In re Smith*, 397 B.R. 810, 817
(Bankr. E.D. Tex. 2008), a § 504(a) violation exists if:

> (1) a person or entity was awarded compensation
> under § 503(b)(2) or § 503(b)(4);
>
> (2) a person or entity shared or agreed to share
> in the awarded compensation; and
>
> (3) the person or entity that shared the
> compensation does not fit within one of the statutory
> exceptions.

Section 504(a) is inapplicable.  This is not a case like *In re
Smith*, 397 B.R. 810 (Bankr. E.D. Tex. 2008), relied upon by the
chapter 13 trustee, in which an attorney, Vilt, was paid by
debtor's lead attorney, Klitsas, out of fees Klitsas received as
compensation from the estate.  Fisher was not dividing fees with
Weiner, and there was no agreement to share fees at all.  Fisher
was obligated to pay Weiner even if he ultimately did not receive
compensation from the estate for the services rendered by Wiener.
"In the context of bankruptcy compensation, sharing would consist
of taking an existing fee and splitting it among two or more
professionals with each having a present and concurrent right to

payment." *In re Mazzei*, 522 B.R. 113, 132-33 (Bankr. W.D. Pa.
2014), *appeal dismissed sub nom. Mazzei v. Winnecour*, No. BR
13-203, 2015 WL 1716282 (W.D. Pa. Apr. 15, 2015); *In re Ferguson*,
445 B.R. 744, 754 n.14:

> It is debatable whether most contract arrangements
> actually present the issue of prohibited fee sharing.
> Presumably, payment of the contractor in most cases is
> not dependent on the employing firm collecting its fees;
> the firm will be liable to the contractor regardless of
> whether or not it is paid in the case on which the
> contractor worked.

There are, however, decisions that cast doubt on whether it is
appropriate to hold that § 504(a) is inapplicable when an
attorney engages the services of an independent contractor
professional to assist the attorney in a case and does not agree
to share or does not actually share his compensation with that
independent contractor professional.

For example, in *In re Egwu*, No. 10-30652-RAG, 2012 WL
5193958 (Bankr. D. Md. Oct. 19, 2012), an attorney, Mr. Cahn,
employed the services of another attorney, Ms. Gilden, to provide
coverage for the debtor, Mr. Egwu, at the meeting of creditors
and certain hearings.  The court found that Mr. Cahn had a fee
sharing arrangement with Ms. Gilden:

> Mr. Cahn testified that Ms. Gilden was an independent
> contractor.  The Court concludes that characterization is
> an afterthought intended to elude the plain meaning of
> the relevant Code sections and rules.   The Fee
> Application bills Mr. Egwu for the services Ms. Gilden
> performed and that reflects his direct obligation to be
> financially responsible for them.   The Court does not
> believe that the relationship was anything but a

3

> fee-sharing one wherein the dollars paid by Mr. Egwu to
> Mr. Cahn can be effectively, if not forensically, traced
> to Ms. Gilden's purse.

*Id.* at *2 n.9. In other words, the court in *In re Egwu* drew an inference from the surrounding circumstances that a fee sharing arrangement existed. Although it is a close call, I do not draw that inference from the circumstances of this case. Fisher has already paid Weiner for her work at $65 per hour. There was no agreement that Weiner was to share in the amounts that Fisher might recover pursuant to Fisher's eventual application for compensation and reimbursement of expenses, and Fisher does not intend to share the compensation and reimbursement of expenses he receives with Weiner.

Another example is *In re Tarasiak*, 280 B.R. 791 (Bankr. D. Mass. 2002), in which the court mentioned § 504(a) in disallowing fees for payments to an independent contractor professional. However, there was no meaningful analysis of whether there was an arrangement for sharing fees, and the apparent real basis for disallowing fees in that case was that the independent contractor professional had not been approved for employment pursuant to § 327(a). The debtor (and Fisher, on behalf of the debtor) was not required under § 327(a) to obtain authorization to utilize Weiner's services. Section 327(a) applies to employment of professionals by a trustee or by a chapter 11 debtor-in-possession that is subject to the duties of a trustee. This is a

4

chapter 13 case in which § 327(a) does not apply to the debtor.

Accordingly, I find such decisions as *In re Egwu* and *In re Tarasiak* to be distinguishable, and I conclude that § 504(a) was not violated in this case because there was no sharing of fees or an agreement to share fees.

II

The trustee also objects that Fisher and Weiner violated disclosure obligations under 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b).  Section 329(a) provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered  or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Rule 2016(b) provides:

> Disclosure of Compensation Paid or Promised to Attorney for Debtor.  Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.  The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required.  A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

5

Two other rules may bear on this issue. Fed. R. Bankr. P. 9001(10) defines "regular associate" to mean "any attorney regularly employed by, associated with, or counsel to an individual or firm." In addition, Fed. R. Bankr. P. 2014(b) (dealing with a trustee or debtor-in-possession obtaining authorization to employ a professional) provides in relevant part:

> If, under the Code and this rule . . . a named attorney . . . is employed, any partner, member or regular associate of the . . . individual may act as attorney . . . so employed, without further order of the court.

In addition, 11 U.S.C. § 504(b)(1) provides, as an exception to § 504(a), that a "regular associate *in* a professional association, corporation, or partnership" (emphasis added) may share compensation. For purposes of the § 504(a) issue, I concluded that this is not a case of Fisher sharing or agreeing to share fees with Weiner. Accordingly, I did not need to decide whether Weiner is a "regular associate in" Fisher's law firm within the meaning of § 504(b)(1). The case law on this point is in disarray. *Compare In re Ferguson*, 445 B.R. 744, 752 (Bankr. N.D. Tex. 2011); *In re Peterson*, 2004 WL 1895201, at *5 (Bankr. D. Idaho Aug. 25, 2004) (notwithstanding language of Fed. R. Bankr. P. 9001(10), the plain language of section 504(b)(1) only allows an attorney to share fees with a member, partner, or regular associate *in* the same professional association, corporation, or partnership); and *In re Greer*, 271 B.R. 426

6

(Bankr. D. Mass. 2002), *with In re Worldwide Direct, Inc.*, 316
B.R. 637 (Bankr. D. Del. 2004) (holding that temporary attorneys
and paralegals who were independent contractors but were under
close supervision of the firm applying for compensation fell
within the exception), and *Lemonedes v. Balaber-Strauss (In re
Coin Phones, Inc.)*, 226 B.R. 131 (S.D.N.Y. 1998), *aff'd*, 189 F.3d
460 (2d Cir. 1999) (dictum stating that a lawyer "who is acting
'of counsel' for a law firm and is held out to the public will be
regarded as a 'member' within 11 U.S.C. § 504, so as to be free
from statutory limitations on fee sharing arrangements."
(citations omitted)).

With that as background, I turn now to whether, based on
§ 329(a) and Rule 2016(b), the application should be denied with
respect to work performed by Weiner.  The facts are these.
Weiner assisted Fisher in preparing the brief in the direct
appeal from this court's order of June 25, 2015, to the Court of
Appeals.  Weiner's name appears on the debtor's brief filed in
the Court of Appeals as a member of another law firm, along with
Fisher's name as a member of his own law firm.  Fisher paid
Weiner as an independent contractor, not as an employee.  Fisher
has employed Weiner's services on other cases, and he supervised
her and worked closely with her in the appeal in this case, thus
distinguishing this from cases like *In re Egwu* in which
"appearance attorneys" cover meetings of creditors with little

knowledge of the case.  However, Fisher has not engaged Weiner as
an associate in his law firm.  Fisher agreed to pay Weiner $65
per hour without regard to whether Fisher were to be compensated
for Weiner's services.  Fisher's amended Rule 2016(b) statement,
filed June 25, 2015, recited that for legal services, he had
agreed to accept $300 per hour, and in it Fisher recited that "I
have not agreed to share the above-disclosed compensation with
any other person unless they are members and associates of my law
firm."  There is no evidence that Fisher failed to obtain the
debtor's consent to Weiner's working on the appeal, but there is
no written retainer agreement evidencing an agreement for Weiner
to work on the appeal.  Fisher did not amend his Rule 2016(b)
statement to disclose the arrangement for Wilkerson to compensate
Fisher for Weiner's work on the case.  Nor did Weiner file a Rule
2016(b) statement.

Within the meaning of § 329(a) and Rule 2016(b), Weiner was
an attorney representing Wilkerson as a debtor in the case.
Fisher argues that Weiner was a "regular associate" of Fisher,
meaning, under Rule 9001(10), an attorney "regularly employed by,
associated with, or counsel to" Fisher.  Thus, he contends, no
Rule 2016(b) statement was required regarding Weiner.

There are two parts to Fisher's argument: first, that a
"regular associate" is not required to file a Rule 2016(b)
statement when the principal lawyer has filed a Rule 2016(b)

8

statement, and, second, that Weiner was a "regular associate."
The first part of Fisher's argument is correct, the second part
is incorrect.

Although it does not expressly so provide, Rule 2016(b) does
not require an attorney to file a Rule 2016(b) statement if she
is a "regular associate" of the debtor's attorney who *has* filed a
Rule 2016(b) statement.  Rule 2014(b) exempts regular associates
of a lawyer, whose employment by a trustee (or a debtor-in-
possession) has been approved by the court, from any requirement
to have their employment approved by the court.  It makes sense
that, similarly, a regular associate of an attorney who *has* filed
a Rule 2016(b) statement is not required to file a Rule 2016(b)
statement.

I turn now to whether Weiner was a "regular associate" of
Fisher's law firm.  This presents, initially, an issue of whether
Weiner had to be a "regular associate" *in* Fisher's law firm or,
instead, merely regularly associated *with* his law firm or
regularly counsel to Fisher's law firm.  If § 504(b)(1) were at
issue, Weiner would not, under that provision, qualify for
exemption from § 504(a) because she was not a regular associate
*in* Fisher's law firm.  The term "regular associate" as used in
§ 504(b)(1) is limited to regular associates *in* a professional
association, corporation, or partnership.  *See In re Peterson*,
2004 WL 1895201, at *5.  Weiner opened her own law firm, and

9

listed herself as being a member of that firm on the brief in the
Court of Appeals.  As an independent contractor, with offices
separate from Fisher's, Weiner cannot be viewed as a "regular
associate" *in* Fisher's firm.

Fisher argues that the definition of "regular associate" in
Rule 9001(10) authorizes his use of Weiner (without her being
required to file a Rule 2016(b) statement) if she was regularly
associated *with* his law firm, or regularly counsel to his firm,
even if not a regular associate *in* his law firm.  This type of
argument was noted in *In re Ferguson*, 445 B.R. at 752:

> Rules 9001(10) and 2014(b) can arguably be reconciled
> with section 504: the latter provision bars the sharing
> of compensation, while the two rules make clear a broader
> range of persons may work on a case.  Thus one associated
> *with* an employed firm may work on a case but may only
> share in the compensation awarded in the case . . . if he
> or she is *in* the firm.

I will assume that it would have sufficed for Weiner to be
"regularly associated" *with* Fisher's law firm or "regularly . . .
counsel" to his law firm.

However, Weiner was *not* regularly associated with Fisher's
law firm or regularly counsel to that firm.  Her relationship
with Fisher was sporadic (albeit fairly often, working on four or
five cases with Fisher last year) and not on a regular basis.  On
the brief filed in the Court of Appeals, Weiner held herself out
as in her own law firm, which Fisher represents that she opened
at the beginning of the year 2016.  Fisher represents that he

held Weiner out as "of counsel" on briefs she worked on in other cases, until she opened her own law firm, but there is no evidence that he held her out as "of counsel" on this case.[1]  In any event, the "of counsel" designation when used meant nothing more than that Weiner was assisting in such cases, not that she was *regularly* associated with or *regularly* counsel to Fisher's firm.  She worked at her own office, not at Fisher's, and worked with Fisher's firm only from time to time.  The record does not convince me that she was *regularly* associated with Fisher's firm. Weiner was thus not excepted from the requirements of § 329(a) based on being a "regular associate" of Fisher.

Although Weiner was receiving compensation (as a subcontractor) from Fisher, and not from the estate, § 329 and Rule 2016(b) are clear that an attorney representing a debtor in a case (as Weiner was) is required to disclose her agreement for compensation to be paid for representing the debtor "whether or not such attorney applies for compensation."  Accordingly, Rule 2016(b) required Weiner to file a Rule 2016(b) statement.

In addition, Fisher was required to file an amended Rule 2016(b) statement once he engaged Weiner to work on the brief, as Wilkerson's agreement to compensate Fisher for Weiner's services

---

[1]  Fisher filed a brief on appeal in the District Court without listing Weiner as "of counsel" and he similarly filed the petition in the Court of Appeals for leave to pursue a direct appeal without listing Weiner as "of counsel" on the case.

11

was a new agreement of compensation to be paid. *See In re
Bradley*, 495 B.R. 747, 789 (Bankr. S.D. Tex. 2013):

> Even if an attorney does not initially know whether he
> will utilize another attorney not employed at the same
> firm to represent his clients, the attorney--once he or
> she does decide to utilize an appearance attorney--must
> file an amended Rule 2016 Disclosure within the fourteen
> (14) day time frame mandated by Bankruptcy Rule 2016(b).

This was particularly important because Fisher was paying Weiner
$65 per hour, not the $300 per hour he billed the debtor for
Weiner's services, a fact that came to light only at the hearing
on the fee application, and a fact that, as discussed later,
bears on how much is to be awarded to Fisher for Weiner's
services even disregarding the Rule 2016(b) issue.  If Weiner and
Fisher had both filed Rule 2016(b) statements, the arrangement
for compensating Weiner at only $65 per hour would have been
disclosed.

Nevertheless, Weiner's participation in the appeal was a
matter of record, and the law was unclear whether Rule 2016(b)
applied, with Fisher having a good faith argument that Weiner *was*
his "regular associate."  Thus, a total disallowance of the
application with respect to Weiner's services based on Weiner's
failure to file a Rule 2016(b) statement and Fisher's failure to
amend his Rule 2016(b) statement is unwarranted.  However, the
failure to comply with Rule 2016(b), resulting in the $65 per
hour rate of compensation paid to Weiner not being disclosed
until the hearing on the fee application, justifies disallowing

12

fees for Weiner's services that exceed $65 per hour.  The $65 per
hour arrangement ought not have surfaced only at the hearing on
the fee application.  In any event, limiting the fees for
Weiner's services to $65 per hour is warranted on alternative
grounds discussed next.

III

Fisher only paid Weiner $65 per hour.  He "up-billed"
Weiner's services in seeking compensation at the hourly rate of
$300 per hour.  He seeks to justify this on the basis that, for
billing purposes, the prevailing market rate for the services of
an attorney with Weiner's experience would be $300 per hour if
she were an attorney in Fisher's firm.  However, Fisher dealt
with her as an independent contractor, incurred none of the
expenses that would be associated with an attorney employed in
his firm, and failed to carry his burden of proving that he
incurred any meaningful extra cost beyond the $65 per hour he
paid Weiner.  Accordingly, I will allow the compensation for
Weiner's services at only $65 per hour.  *See In re Worldwide
Direct, Inc.*, 316 B.R. 637, 651-52 (Bankr. D. Del. 2004) (law
firm limited to compensation paid for the temporary
professionals' services because it failed to carry its burden to
prove that it incurred meaningful extra costs beyond such
compensation paid).  Weiner performed 32.1 hours of services.  At
$65 per hour, Fisher paid her $2,086.50.  He sought $8,581.50 for

13

her services.[2]  This results in a $6,495.00 disallowance of the fees sought.

IV

Fisher's initial Rule 2016(b) statement indicated that he had agreed to handle the case for a fee of $4,500.  After briefing the housing allowance expense issue in this court, he amended the statement to indicate that the case would be handled on an hourly basis.  The chapter 13 trustee urges this court to treat Fisher's initial Rule 2016(b) fee disclosure as binding on him.

This court has no local rule regarding "no-look" fees, meaning, a set amount for handling a chapter 13 case that will not require a detailed submission showing the hours spent on the case, so long as the case results in a confirmed plan.  However, if a case results in a confirmed plan, the court ordinarily does not require the submission of details of the hours spent on the case in order to justify a flat fee of $4,500.  Flat fees even out over the long run: sometimes a client's case entails many hours of work that, if billed at an hourly rate, would far exceed the flat fee; and sometimes the case entails relatively few hours of work that, if billed at an hourly rate, would be far less than the flat fee.  The use of a flat fee is justified because of the

---

[2]  He billed her services at $300 per hour, with one time entry for 0.2 hours billed at $125 per hour, and against the total he applied a 10% discount.

assurances it gives the debtor that all issues in the case will
be handled for the flat fee, and because of the ease of
administration of fees that it gives to the attorney and the
court.

In the past, this court has criticized a switch from
representing that a case was being handled for a flat fee to
applying for fees on an hourly rate:

> By the current application, the debtors' attorney seeks
> to have the best of both worlds: to have been assured of
> receiving $4,500 regardless of the number of hours of
> work required of him, but now seeking to recover on an
> hourly fee basis because that results in a greater fee
> because the case required more hours of work than the
> typical chapter 13 case.  The Rule 2016(b)statement did
> not append a copy of the representation agreement or
> otherwise provide any details beyond reflecting an
> agreement for the attorney to handle the entirety of the
> case for a flat fee of $4,500.  An attorney ought not be
> allowed to change the terms of representation once it
> becomes apparent that an hourly fee approach is more
> advantageous. And if the attorney's arrangement with the
> debtors was not a flat fee arrangement, the Rule 2016(b)
> statement ought to have disclosed that.

*In re Simpson*, Case No. 13-00509 (Order of May 9, 2014 (Dkt. No.
76).  *See also In re Hyland*, 2014 WL 269883, No. 13-32971 (Bankr.
E.D. Tenn. Jan. 23, 2014).  However, the court's order in *In re
Simpson* permitted the attorney to amend his Rule 2016(b)
statement to reflect more accurately the agreement with the
debtors regarding fees.  As reflected by a decision dated June 4,
2014, and entered in that case on June 5, 2014 (Dkt. No. 80), the
attorney did amend his Rule 2016(b) statement, and the court
allowed fees beyond a flat fee.

15

Fisher practices here, but he also practices in the United States Bankruptcy Court for the District of Maryland, a court in which flat fees are allowed with a proviso that counsel may by application "request approval of additional fees for work done upon matters that were both not reasonably expected and that are extraordinary" (Bankr. Ct., D. Md., LBRs, Appendix F, ¶ 4(A)). Fisher's retainer agreement here included a term to that effect, although he cannot find the retainer agreement.  He also made clear that the terms set forth in the amended Rule 2016(b) statement (switching to billing on an hourly basis) had been agreed to by the debtor.  He amended his Rule 2016(b) statement here to an hourly rate in light of the extraordinary amount of work this case entailed and that could not reasonably have been expected.  The appeal here to the Court of Appeals was extraordinary and the amount of hours required could not have been reasonably anticipated, nor was it anticipated that there would be the necessity to respond to a motion to dismiss based on the court's adverse ruling, thereby necessitating a motion for a stay pending appeal, and multiple confirmation hearings, with the case taking from October 4, 2014, until March 28, 2016, before entry of an order finally resolving all confirmation issues.

Fisher is to be criticized for failing accurately to describe his fee arrangement in his initial Rule 2016(b) statement, something that could have been avoided if he had

appended the retainer agreement to the Rule 2016(b) statement,
but it would be a draconian result to bind him to the erroneous
initial Rule 2016(b) statement when the case was truly
extraordinary.[3]  However, the work he performed included what can
be characterized as ordinary chapter 13 work that would be
treated as covered by the flat fee, and he ought not be allowed
to switch to billing all work based on an hourly rate when that
would be contrary to the initial retainer agreement.  Limiting
him to a flat fee for such ordinary work (and strictly holding
him to his burden of showing that any item at issue should be
treated as extraordinary work) is an adequate sanction for his
inadequate disclosure of his fee arrangement.  In any event,
reducing his fees on that basis is consistent with the Maryland
Appendix F that he thinks his retainer agreement mirrored, with
only extraordinary work to be billed at an hourly rate.  The
Appendix F does not allow an attorney to switch to billing even
ordinary work on an hourly basis: such ordinary work is
compensable at a flat fee and only the extraordinary work is
billed at an hourly rate: it is only "additional fees for work
done upon matters that were both not reasonably expected and that
are extraordinary" that are compensable beyond the flat fee.

    The extraordinary work in this case was the work resulting

_____

    [3]  He also is to be criticized for having misplaced the
retainer agreement and being unable to find it.

from this court's decision of June 25, 2015, capping the debtor's housing allowance, an issue upon which the law was unsettled and an appeal was taken.  The second fee application covers the period of June 24, 2015, to March 21, 2016.  Except for the time entries below, the court will allow the second fee application with respect to the work of Fisher's firm set forth in the second fee application.  The following entries are for what was work that ordinarily would be expected to occur in a chapter 13 case:

06/24/2015 KH *Amend* Disclosure of compensation. File with court. $125.00/hr. 0.20 hrs. **$25.00**

06/25/2015 MF *Fee application* QC time records; draft and file disclosure of compensation.  300.00/hr. 1.50 hrs. **$450.00**

06/25/2015 KH *Fee application* Draft and serve application for compensation notice.  125.00/hr. 1.20 hrs. **$150.00**

09/02/2015 KH *Correspondence* Correspond with client re: tax question $125.00/hr. 0.20 hrs. **$25.00**

11/12/2015 KH *Correspondence* Correspond with client re: income verification and P&Ls $125.00/hr. 0.40 hrs. **$50.00**

02/10/2016 MF *Review* Review Motion for Relief and discuss with paralegal $300.00/hr. 0.30 hrs. **$90.00**

02/12/2016 KH *Correspondence* Correspond with client re: Motion for Relief and income verification docs $125.00/hr. 0.50 hrs. **$62.50**

02/16/2016 KH *Correspondence* Correspond with client to answer questions about motion for relief $125.00/hr. 0.40 hrs. **$50.00**

02/29/2016 MF *Review* Review income and tax documents from client $300.00/hr. 0.30 hrs. **$90.00**

03/03/2016 KH *Correspondence* Correspond with client re:DC

tax returns and fax to Trustee upon receipt.  $125.00/hr.
0.30 hrs.  **$37.50**

This comes to $1,030.00, but Fisher discounted his fees by 10%,

so the disallowed amount is 90% of $1,030, or $927.

Work leading to the March 18, 2016 hearing deserves separate

discussion.  On January 19, 2016, the court entered an order

signed on January 16, 2016, that confirmed an interim plan that

was to control pending the outcome of the appeal.  The order

called for re-evaluation of the debtor's net disposable income

based on submission of verification of income for the year 2015,

and set the matter for further review on March 18, 2016.[4]

Usually, upon confirmation of a plan, additional confirmation

hearings are unnecessary.  The unusual approach adopted here

required Fisher to engage in additional work, in light of the

---

[4]  The order was titled *Order Confirming Plan Filed February
19, 2016 Subject to Modification Based on Trustee's Receipt by
February 29, 2016 of Complete and Accurate Income Verification
and Review at the Rescheduled Confirmation Hearing on March 18,
2016 at 9:30 AM and Subject to Further Modification After
Resolution of the Debtor's Pending Appeal*.  The order noted:

> The order resolves a motion for stay pending appeal by
> allowing the debtor to make plan payments pending the
> outcome of the appeal at a lower amount than will be
> required if the appeal is dismissed or the ruling on
> appeal is affirmed.  In the event that, *e.g.*, this
> court's ruling that is on appeal is affirmed, the
> debtor's plan will stand modified automatically by reason
> of this order to provide for an increase in plan payments
> consistent with this court's ruling that is on appeal
> (although it may be necessary for the trustee to file a
> motion to have the court fix the dollar amount of
> remaining plan payments that will be necessary to
> complete the plan consistent with that prior ruling).

appeal, in order to address confirmation issues after the interim confirmation order was entered.  Based on the debtor's new income information for the year 2015, showing reduced income, the debtor was willing to propose a modified plan that she viewed as beneficial to herself and to drop the pending appeal.  The trustee reluctantly agreed to that approach.  At the hearing on the second fee application, the trustee conceded that this additional work, leading to a confirmed modified plan ought to be compensated as extraordinary work in light of the debtor changing direction in the middle of the case.  The work at issue is:

> 03/04/2016 MF *Plan* Telephonic meeting with chapter 13 trustee to discuss hearing on 3/18. Discuss increase in plan payment in exchange for continuing hearing. $300.00/hr. 0.30 hrs.  $90.00

> 03/17/2016 MF *Telephonic Meeting* Three calls with trustee to discuss plan, hearing on motion to dismiss and resolution.  $300.00/hr. 0.70 hrs.  $210.00

> 03/17/2016 KH *Plan* Prepare MWF for hearing with trustee; discuss plan modification, debtor's current real estate income and expenses. $125.00/hr. 1.00 hr.  $125.00

> 03/17/2016 MF *Plan* Call with client to discuss upping funding for trustee and R.E. expenses and income. $300.00 0.30 hrs.  $90.00

> 03/17/2016 MF *Plan* Prepare for hearing on status of case. Prepare file for status with court.  $300.00/hr. 1.00 hrs.   $300.00

> 03/18/2016 MF *Hearing* Attend hearing on status of case; negotiate and resolve appeal.  $300.00 1.80 hrs. $540.00

> 03/18/2016 MF *Travel* Travel to D.C. and back to Annapolis. $150.00/hr. 2.00 hrs.  $300.00

At the hearing, the trustee recited a total dollar amount for

such work that actually exceeds the total amount the court has calculated, but the point is that this work *is* to be compensated, and is not to be treated as ordinary work to be covered by the flat fee for ordinary work of $4,500.

Fisher already received an interim award of $5,500.00 pursuant to his first fee application, which was $1,000.00 more than the flat fee of $4,500.00.  However, that fee listed $7,555.00 in fees (discounted to $5,500), of which $1,443.75 (or $1,051.04 of the discounted fees) related to the preparation of a brief after a confirmation hearing addressing the unsettled issue regarding the housing allowance.  I view that work as sufficiently extraordinary to justify the award of fees $1,000 in excess of the flat fee of $4,500 for the work preceding June 24, 2015.  Accordingly, the $5,500 interim award will not be adjusted.

V

The court will grant the second amended application for an additional fee award of $16,058.82 (the result of $23,480.82 in fees and expenses sought less a $6,495 disallowance relating to Weiner's services and a $927 disallowance relating to the services of Fisher's law firm).

VI

The trustee questioned whether the appeal conferred a benefit on the debtor.  For reasons stated at the hearing, a

21

benefit was conferred.  The trustee relied on *In re Woerner*, 758 F.3d 693 (5th Cir. 2014), in requesting "that this court apply a strict material-benefit standard and deny the counsel's fee request in large part due to lack of appellate success." *Trustee's Reply* at 4.  That reliance was misplaced because rehearing en banc was granted in *In re Woerner*, and upon rehearing en banc the Court of Appeals held that a court may compensate an attorney in a case under chapter 11 of the Bankruptcy Code for services that were objectively reasonable at the time they were made.  *In re Woerner*, 783 F.3d 266 (5th Cir. 2015).  That decision overruled the decision that the panel had felt compelled to follow, *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998).

In hindsight, the appeal here was dismissed and proved unnecessary.  At the time it was pursued, however, it appeared to be warranted, and applying the "reasonable at the time" standard, the appeal was warranted.  The debtor requested pursuit of the appeal, and when her circumstances changed, it was her desire to drop the appeal and to enter into the agreed modified confirmation order to which the trustee reluctantly agreed. Fisher's efforts were for the benefit of the debtor and necessary at the time they were taken.

VII

The chapter 13 trustee also asks that, to avoid prejudice to general unsecured creditors, "any court order for additional fees provide for deferred payment without interest in equal installments for the remaining duration of the plan as permitted by 11 U.S.C. § 1322(a)(2)." *Trustee's Obj.* at 5-6.  Fisher's application sought an allowance of an additional administrative claim, but did not seek an order that the allowed claim be paid before the trustee pays any other claims in the case.  The confirmed plan governs the payment of allowed claims in the case.  To the extent that the trustee or Fisher wants a clarification or modification of the confirmed plan regarding when Fisher's allowed claim is to be paid, that party can file a motion for such clarification or modification.[5]

VIII

In light of the foregoing, it is

ORDERED that the debtor's counsel's second fee application is granted in part, and otherwise denied, and specifically an additional administrative claim of $16,058.82 is allowed (consisting of allowed additional compensation of $14,067.75 and

---

[5]   The confirmed plan provided that "PAYMENTS ON ALLOWED SECURED CLAIMS SHALL BE PAID IN EQUAL MONTHLY PAYMENTS OVER THE DURATION OF THE PLAN BUT THE TRUSTEE MAY PAY ANY SUCH CLAIMS A LARGER AMOUNT IN ANY MONTH," but the plan appears to have been otherwise silent as to the trustee's timing of payment of other claims.

allowed reimbursement of expenses of $1,991.07).

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.